UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---

JULIA WEISENBERG; DAWN FOTOPULOS as trustee
for William Fotopulos and Christine Fotopulos, combined
life estate, remainder interest; MADELINE FOTOPULOS
as trustee for William Fotopulos and Christine Fotopulos,
combined life estate, remainder interest; MICHELLE
D'ARCAMBAL; JANALYN TRAVIS-MESSER; and
JENNIFER LEDERMAN,

                                    Plaintiffs,

                    -v-

TOWN BOARD OF SHELTER ISLAND, and TOWN OF
SHELTER ISLAND,

                                    Defendants.

**MEMORANDUM
AND ORDER**

17-CV-04845 (LDH) (AYS)

---

LASHANN DEARCY HALL, United States District Judge:

Plaintiffs Julia Weisenberg, Dawn Fotopulos, Madeline Fotopulos, Michelle d'Arcambal,

Janalyn Travis-Messer, and Jennifer Lederman assert nine claims against Defendants Town

Board of Shelter Island (the "Town Board") and Town of Shelter Island (the "Town") for

violations of the Fair Housing Act ( "FHA"); New York Town Law § 261; the New York State

Human Rights Law ("NYSHRL"); the First, Fourth, and Fourteenth Amendments to the U.S.

Constitution; and Article I §§ 11 and 12 of the New York Constitution.  Defendants move

pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure to dismiss all claims asserted

by Plaintiffs Weisenberg and Travis-Messer.  (Not. Mot. 1, ECF No. 21.)  Defendants further

move pursuant to Rule 12(b)(6) to dismiss all of Plaintiffs' remaining claims except their eighth

cause of action, which is asserted under the First Amendment.  (*Id.* at 2.)

# BACKGROUND[1]

This action arises from the Town Board's April 21, 2017 enactment and subsequent enforcement of Local Law No. 4 of 2017 (the "Short-Term-Rental Law" or "Law"), which amended the Town Code of Shelter Island to regulate the short-term rental of real property in the Town.  (*See generally* Compl. Ex. A, ECF No. 1-3.)  The Law imposes licensing and advertising requirements for certain vacation rentals, prohibits regulated vacation rentals from being rented more than once in any fourteen-day period, provides civil penalties for violations, and empowers the Town Board to act as the review board for issues associated with the implementation of the Law.  (*Id.* at 3–6.)  The Law became effective immediately upon its filing, on April 28, 2017, and required owners of vacation rentals subject to the Law to obtain licenses by July 1, 2017.  (*Id.* at 2, 6.)  Owners whose rental contracts predated the Law's enactment could apply for waivers from the limit on renting more than once per fourteen-day period.  (*Id.* at 6.)  After December 31, 2017, the Town would no longer issue such waivers.  (*Id.* at 6.)

Plaintiffs each own real property in the Town, though only Plaintiffs Weisenberg and Travis-Messer are Town residents.  (Compl. ¶¶ 1–7, 30.)  Plaintiff Weisenberg's main source of income is the rental of her home.  (*Id.* ¶¶ 1, 20, 23, 26.)  Since the Law's enactment, she has not found new tenants willing to rent for fourteen days or more and has consequently lost rental

---

[1] The following facts are taken from the complaint and annexed exhibit and are assumed to be true for the purpose of this memorandum and order.  Defendants include two maps as exhibits to their memorandum of law in support of their motion to dismiss.  (ECF Nos. 21-4, 21-5.)  Plaintiffs argue that the Court may not consider the maps because Rule 12(b)(6) prohibits the Court's consideration of materials outside the pleadings and the maps are not "matters [of which] judicial notice may be taken."  (Pls.' Mem. Law Opp'n Defs.' Mot. Dismiss ("Pls.' Opp'n") 3, 5 n.1, ECF No. 21-8.)  Although Plaintiffs correctly state the Rule 12(b)(6) standard, they ignore the broader scope of Rule 12(b)(1), set forth below, which permits the Court to consider materials beyond the pleadings.  Moreover, Plaintiffs do not explain why this Court may not take judicial notice of these two publicly available maps under the prevailing law of this circuit.  As the Second Circuit has explained, "[a] district court may take judicial notice of documents where the documents 'can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned.'"  *Finn v. Barney*, 471 F. App'x 30, 32 (2d Cir. 2012) (summary order) (quoting Fed. R. Evid. 201(b)(2)).  In any event, the Court shall consider the maps at issue, if at all, consistent with the appropriate standard of review.

income she would have otherwise earned.  (*Id.* ¶¶ 28–29.)  Plaintiff Travis-Messer works as a real-estate agent renting homes on Shelter Island.  (*Id.* ¶ 51.)  She alleges that the Law has prevented her from making the approximately fourteen short-term rentals per year, on average, that she has made since 2000.  (*Id.* ¶¶ 52–53.)  Plaintiffs Dawn and Madeline Fotopulos are beneficiaries of their parents' Shelter Island home, which they rent out on weekends to raise money care for their disabled parents.  (*Id.* ¶¶ 30–34.)  After the Law's enactment, they did not secure any further rentals.  (*Id.* ¶ 36.)  Plaintiff d'Arcambal owns a home in the Town that she has rented for approximately eighteen years.  (*Id.* ¶¶ 37–42.)  Since the Law's enactment, her rental income has dropped significantly.  (*Id.* ¶ 48.)  Plaintiff Lederman purchased a vacation property in the Town in 2015 and predominately rented it for periods of less than fourteen days.  (*Id.* ¶¶ 54, 56.)  After the Law's enactment, she turned down all weekend rentals for 2017.  (*Id.* ¶ 55.)

## STANDARD OF REVIEW

"A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it."  *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000).  The plaintiffs bear the burden of establishing by a preponderance of the evidence that subject-matter jurisdiction exists.  *Id.*  "In reviewing a Rule 12(b)(1) motion to dismiss, the court 'must accept as true all material factual allegations in the complaint, but [the court is] not to draw inferences from the complaint favorable to plaintiff[].'"  *Tiraco v. N.Y. State Bd. of Elections*, 963 F. Supp. 2d 184, 190 (E.D.N.Y. 2013) (quoting *J.S. ex rel. N.S. v. Attica Cent. Sch.*, 386 F.3d 107, 110 (2d Cir. 2004)).  Further, "[i]n resolving a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1), a district court . . . may refer to evidence outside the pleadings."  *Makarova*, 201 F.3d at 113.

To withstand a Rule 12(b)(6) motion to dismiss, a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  A claim is facially plausible when the alleged facts allow the court to draw a "reasonable inference" of a defendant's liability for the alleged misconduct.  *Id*.  While this standard requires more than a "sheer possibility" of a defendant's liability, *id*., "[i]t is not the [c]ourt's function to weigh the evidence that might be presented at trial" on a motion to dismiss. *Morris v. Northrop Grumman Corp.*, 37 F. Supp. 2d 556, 565 (E.D.N.Y. 1999).  Instead, "the court must merely determine whether the complaint itself is legally sufficient, and, in doing so, it is well settled that the court must accept the factual allegations of the complaint as true." *Id*. (citations omitted).

## DISCUSSION

### I.     Rule 12(b)(1) Motion

Defendants argue that Plaintiffs Weisenberg and Travis-Messer lack Article III standing. (Mem. Law Supp. Defs.' Mot. Dismiss Compl. ("Defs.' Mem.") 5–8, ECF No. 21-6.)  "No principle is more fundamental to the judiciary's proper role in our system of government than the constitutional limitation of federal-court jurisdiction to actual cases or controversies.  The concept of standing is part of this limitation." *Simon v. E. Ky. Welfare Rights Org.*, 426 U.S. 26, 37 (1976) (citation omitted).  The "irreducible constitutional minimum" of Article III standing consists of three elements:  "The plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016) (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 560–61 (1992)).  The plaintiff bears the burden to "'clearly . .

4

. allege facts demonstrating' each element." *Spokeo*, 136 S. Ct. at 1547 (quoting *Warth v. Seldin*, 422 U.S. 490, 518 (1975)).  Defendants do not contest that Plaintiffs meet the second and third elements necessary to establish standing.  Rather, they maintain that neither Weisenberg nor Travis-Messer has pleaded the requisite injury to confer jurisdiction on this Court.  (*See* Defs.' Mem. 6–7 ("Because [Weisenberg's] premises are 'owner occupied,' they are exempt from the short-term rental law."); *id.* at 7 (arguing that Travis-Messer's alleged injury is "ambiguously" pleaded without sufficient "particulars").)  "To establish injury in fact, a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Spokeo*, 136 S. Ct. at 1548 (quoting *Lujan*, 504 U.S. at 560).

### A.    Plaintiff Weisenberg

Defendants maintain that Plaintiff Weisenberg has not adequately pleaded a constitutionally sufficient injury in fact, because she alleges that she resides in an "owner-occupied" home that is exempt from the Short-Term-Rental law.  (Defs.' Mem. 6–7.)  The Court agrees.

The Law regulates only vacation rentals, which are statutorily defined as mutually exclusive from owner-occupied properties.  (Compl. Ex. A at 3 ("Vacation Rentals shall not include: . . . Any premises, or portion of premises, that is [*sic*] owner occupied . . . .").)  Under the Law, "owner occupied" properties are "[p]remises where [the legal] owner is simultaneously domiciled on the same or adjacent premises with [*sic*] tenant or tenants during a rental term." (*Id.* (emphasis added).)  Weisenberg alleges that she has spent a majority of the past 43 years living year-round in her Shelter Island home, where she still resides.  (Compl. ¶¶ 1, 20.) Accepting Plaintiffs' allegations as true, as this Court must, Weisenberg is domiciled in the same

permanent and principal Shelter Island home she wishes to rent out.  (*See id.* ¶¶ 23–26 (describing Weisenberg's practice of renting "her home" for income).)  Thus, by the plain terms of the Short-Term-Rental Law, Weisenberg's property is owner-occupied and not subject to regulation as a vacation rental.  In short, Weisenberg fails to plead facts clearly establishing that she is in fact injured by the Law, so she lacks standing to challenge it.

Weisenberg's argument that she has suffered the requisite injury in the form of reduced rental income, on the grounds that she has not been able to find new tenants willing to rent for periods of fourteen days or more, cannot save her claim.[2]  (*See* Pls.' Mem. Law Opp'n Defs.' Mot. Dismiss ("Pls.' Opp'n") 4–5, ECF No. 21-8 (citing Compl. ¶ 27).)  Although Defendants do not squarely address the causation element of standing, it is clear that any harm Weisenberg suffered from reduced rents cannot be fairly traceable to a law that does not regulate her property.

### B.    Plaintiff Travis-Messer

Defendants' arguments challenging the standing of Plaintiff Travis-Messer are less persuasive.  According to Defendants, Travis-Messer's injury sustained as a real estate agent—namely, that she can no longer broker short-term rentals—is too indirectly connected to the Law to give her standing to sue.  (*Id.* at 7–8.)  In support of their argument, Defendants rely entirely on a Northern District of California case, *HomeAway, Inc. v. City and County of San Francisco*, in which a corporate plaintiff lacked standing to challenge a municipal ordinance regulating

---

[2] Nor do Plaintiff Weisenberg's allegations of retaliation cure her lack of standing.  *First*, her allegation that she received a threatening letter from non-party Suffolk County requesting a three-percent hotel tax for her rentals (Compl. ¶ 27), is irrelevant to her claims here, none of which regards county-level taxation.  *Second*, her vague and conclusory allegation that the Town reported her in retaliation for registering for a license to engage in short-term rentals (*id.*), is untethered to her claims—none of which arises out of alleged retaliation—and is devoid of any factual assertions that would establish standing here.

short-term vacation rentals, No. 14-CV-04859, 2015 WL 367121, at *7–12 (N.D. Cal. Jan. 27, 2015).  Plaintiffs argue that *HomeAway* is not analogous to this case because the *HomeAway* plaintiff did not participate in the rental transactions at issue, while Plaintiff Travis-Messer does. (Pls.' Opp'n 6.)  Plaintiffs are correct in part.  The distinction between *HomeAway* and this case, however, is one of law, not fact.

In *HomeAway*, the district court concluded that the plaintiff lacked *prudential* standing to challenge the residency requirement of a short-term-rental ordinance in San Francisco. *HomeAway*, 2015 WL 367121, at *7–-12.  Prudential standing is a doctrine developed by the Supreme Court under which courts may decline to adjudicate certain categories of cases even where Article III's constitutional minimum has been met.  *See Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 126 (2014).  Here, by contrast, Defendants contest only whether Plaintiff Travis-Messer meets the constitutional minimum of Article III standing. (Defs.' Mem. 5–8.)  Defendants do not contest or even mention prudential standing.

Travis-Messer's allegation that, as a result of the Short-Term-Rental Law, she can no longer broker the short-term rentals that made up a portion of her business from 2000 to 2017, establishes her injury in fact.  (Compl. ¶¶ 52–53.)  No more is required to support Article III standing here.

## II.    Rule 12(b)(6) Motion

### A.    Statutory Claims

#### 1.    FHA Claims

Defendants argue that Plaintiffs lack standing to assert FHA claims on behalf of their potential tenants, who are non-parties to this action.  (Defs.' Mem. 21–22.)  Plaintiffs counter that they do have standing to assert their own economic injuries stemming from the Law's

exclusion of a protected class of their prospective renters.  (Pls.' Opp'n 16–17.)  Without

reaching the issue of standing, but assuming that it exists, the Court can dispose of Plaintiffs'

FHA claim as deficient on the merits.

As pertinent here, the FHA makes it unlawful to discriminate against any person in the

terms, conditions, or privileges of sale or rental of a "dwelling" on the basis of familial status.

42 U.S.C. § 3604(b).  The FHA defines the term "dwelling" as, in relevant part, "any building,

structure, or portion thereof which is occupied as, or designed or intended for occupancy as, a

residence by one or more families."  *Id.* § 3602(b).  There is no statutory definition of the term

"residence."  Other circuit courts have relied on the plain meaning of residence, which

encompasses a sense of a home, as opposed to a temporary destination, to determine what

constitutes a dwelling.[3]  *E.g.*, *Schwarz v. City of Treasure Island*, 544 F.3d 1201, 1215 (11th Cir.

2008) (holding that "the more occupants treat a building like their home" and "the longer the

typical occupant lives in a building, the more likely it is that the building is a 'dwelling'");

*United States v. Columbus Country Club*, 915 F.2d 877, 881 (3d Cir. 1990) (holding that "the

central inquiry is whether the [affected individuals] intend to remain in the [properties at issue]

for any significant period of time and whether they view [such properties] as a place to return

to").  District courts in this circuit have similarly construed the term "residence" to mean a place

intended to be used for living, rather than merely visiting.  *Jenkins v. N.Y.C. Dep't of Homeless

Servs.*, 643 F. Supp. 2d 507, 517–18 (S.D.N.Y. 2009) (noting that courts define residence

according to its plain meaning as "a temporary or permanent dwelling place, abode or habitation

---

[3] In construing a different statute, the National Housing Act, the Supreme Court has noted that "the idea of permanency pervades the concept of 'dwelling.'"  *Fed. Hous. Admin. v. Darlington, Inc.*, 358 U.S. 84, 88 (1958) ("A person can of course take up permanent residence even in a motel or hotel.  But those who come for a night or so have not chosen it as a settled abode.").

to which one intends to return as distinguished from the place of temporary sojourn or transient visit") (quoting *United States v. Hughes Mem'l Home*, 396 F. Supp. 544, 548-49 (W.D. Va. 1975)), *aff'd on other grounds*, 391 F. App'x 81 (2d Cir. 2010).  This Court construes the term "dwelling" under the FHA in the same manner.

The Short-Term-Rental Law defines the term "vacation rental" as a "dwelling unit which is used as a temporary residence by persons other than the owner."  (Compl. Ex. A at 3.)  On its face, this definition might suggest that a vacation rental under the Law constitutes a dwelling as defined by the FHA.  However, the vacation-rental properties at issue here are statutorily defined to exclude properties rented for more than two weeks at a time.  Moreover, Plaintiffs do not allege that their vacation rentals were intended for use as actual residences by renters.  Indeed, the complaint is bereft of any allegations that any short-term tenants treat the vacation rentals as homes or intend to return to them.  Plaintiffs' properties are therefore not dwellings subject to the FHA, and the claim fails.

2.      Town Law § 261

In their fifth cause of action, Plaintiffs seek to invalidate the Short-Term-Rental Law on the grounds that it violates Town Law § 261.  (Compl. ¶¶ 108–17.)  Defendants argue that the Law is a valid exercise of the Town's authority under § 261 to regulate land use.[4]  (Defs.' Mem. 18–20.)  The Court agrees.

---

[4] Defendants also argue that Plaintiffs' failure to serve a notice of claim as required by New York Town Law § 67 and New York General Municipal Law §§ 50-e and 50-i requires dismissal of their § 261 claim.  (Defs.' Mem. 10.) In response, Plaintiffs argue that a notice of claim is unnecessary where an action primarily seeks injunctive relief and money damages are merely incidental, or where the action regards claims other than those for personal injury, property damage, or wrongful death.  (Pls.' Opp'n 11–12.)  By its plain terms, Town Law § 67 applies only to actions "for damages for wrong or injury to person or property or for the death of a person."  N.Y. Town Law § 67. Defendants cite no cases requiring notice before filing a claim, such as this one, challenging the propriety of a zoning ordinance.  (*See generally* Defs.' Mem. 10; Defs.' Mem. Reply Pls.' Opp'n Mot. Dismiss Compl. 7–8, ECF No. 21-9.)  Indeed, courts routinely review such claims without any reference to Town Law § 67.  *See, e.g.*, *Sunrise*

Town Law § 261 provides, in relevant part, that town boards are "empowered by local law . . . to regulate and restrict the . . . the density of population, and the location and use of buildings, structures and land for trade, industry, residence or other purposes."  The zoning power conferred by § 261 "is not a general police power, but a power to regulate land use: '[I]t is a fundamental principle of zoning that a zoning board is charged with the regulation of land use and not with the person who owns or occupies it.'"  *Sunrise Check Cashing v. Town of Hempstead*, 986 N.E.2d 898, 900 (N.Y. 2013) (quoting *Dexter v. Town Bd. of Town of Gates*, 324 N.E.2d 870, 871 (N.Y. 1975)).  As such, courts will invalidate town zoning ordinances that exceed this authority by targeting particular businesses.  For example, in *Sunrise Check Cashing v. Town of Hempstead*, the New York Court of Appeals invalidated a town zoning ordinance expressly prohibiting check-cashing establishments.  986 N.E.2d at 485.  Similarly, in *Dexter v. Town Board of Town of Gates*, the court invalidated a law that rezoned a single residential plot to a commercial one for the express and sole purpose of permitting the operation of a Wegmans Food Market there.  324 N.E.2d at 872.  Such impermissible singling out is not present in this case.

Here, the Law's regulation of vacation rentals of fourteen days or less properly regards the use of land.  (Compl. Ex. A at 3.)  That the Town chose to draw the line at fourteen days, rather than thirty days or six months or a year, does not alter this conclusion.  That is, the Law regulates vacation rentals based on their duration, not the identity of owners or renters.  And the Law's distinction between owner-occupied and non-owner-occupied properties is similar to zoning restrictions on the issuance of rental permits to non-resident homeowners that New York

*Check Cashing v. Town of Hempstead*, 986 N.E.2d 898, 900 (N.Y. 2013); *Dexter v. Town Bd. of Town of Gates*, 324 N.E.2d 870, 871 (N.Y. 1975).

courts have repeatedly upheld.  *See, e.g.*, *Spilka v. Town of Inlet*, 778 N.Y.S.2d 222, 225 (N.Y.

App. Div. 2004) ("Placing restrictions on absentee landlords is reasonably related to achieving

[legitimate governmental] goals and does not improperly distinguish between homeowners who

occupy their premises and those who do not."); *Kasper v. Town of Brookhaven*, 535 N.Y.S.2d

621, 626 (N.Y. App. Div. 1988) (upholding town law permitting only resident homeowners to

obtain permits for accessory rental apartments).  The Law simply does not run afoul of Town

Law § 261.

Plaintiffs' argument to the contrary—that the Law's "license requirement converts each

owner's core right to rent into a privilege . . . that . . . is personal to the licensed owner," thereby

impermissibly regulating "the user rather than the residential use"—is unavailing. [5]  (Pls.' Opp'n

14.)  In upholding licensing regimes under which only resident homeowners could obtain rental

licenses, New York courts have implicitly rejected the idea that a licensing requirement violates

Town Law § 261.  *Spilka*, 778 N.Y.S.2d at 225; *Kasper*, 535 N.Y.S.2d at 626.  Indeed, as the

---

[5] The complaint includes an additional allegation—that the Law's exclusion from regulation of short-term rentals by three named non-profit organizations "further demonstrates a clear intent to regulate the owner or occupant of a property, rather than the use of a land," in violation of Town Law § 261.  (Compl. ¶ 116.)  In their opposition brief, however, Plaintiffs do not raise this argument in connection with their § 261 claim, but only with respect to their equal-protection claim.  (*Compare* Pls.' Opp'n 9–11 *with id.* at 11–15.)  In any event, a zoning ordinance must be upheld "if on any interpretation of the facts known or reasonably to be perceived, the zoning measure falls within the embrace of the town's authority to regulate property as a means of promoting the general welfare of the community."  *Town of Huntington v. Park Shore Country Day Camp of Dix Hills, Inc.*, 390 N.E.2d 282, 284 (N.Y. 1979) (citing Town Law § 261).  In *Dix Hills*, the New York Court of Appeals upheld a zoning ordinance that permitted the creation and operation of tennis courts by private, nonprofit clubs but prohibited commercial enterprises from maintaining identical facilities for use by the general public.  *Id.* at 283–84.  The court reasoned that "it is a point too obvious to belabor that the separation of business from nonbusiness uses is an appropriate line of demarcation in delimiting permitted uses for zoning purposes."  *Id.* at 284.  Similarly here, the Law expressly excludes from regulation "premises used exclusively for . . . non-profit purposes."  (Compl. Ex. A at 3.)  The Law's specific exemption of short-term rentals "that are used as fund-raisers for [three particular] non-profits" is effectively subsumed by the Law's general non-profit exemption.  (*Id.* at 4.)  In other words, it does not appear that the exemption at issue has any practical effect that might be viewed as improperly directed at certain owners of property.  Moreover, Plaintiffs have not cited any cases directing courts to look to what is excluded from regulation in order to determine whether a zoning ordinance improperly regulates an owner rather than land use.  By contrast, as the Appellate Division has recognized, "mere disparate treatment is not a sufficient basis for voiding a zoning provision."  *Kasper*, 535 N.Y.S.2d at 625.

Appellate Division recognized in *Kasper v. Town of Brookhaven*, "[w]hile it is generally true that zoning has as its purpose the regulation of land and not landowners, it is clear that, as a practical matter, many zoning laws extend beyond the mere regulation of property to affect the owners and users thereof." 535 N.Y.S.2d at 626 (internal citation omitted). The same is true here.

3.    NYSHRL

Defendants correctly argue that Plaintiffs' seventh cause of action, under the NYSHRL, must be dismissed because the properties at issue are not "publicly-assisted housing accommodations" protected by subsection 2-a of New York Executive Law § 296. (Defs.' Mem. 23.) Plaintiffs effectively concede that they could not prevail under subsection 2-a. (Pls.' Opp'n 18.) Indeed, they make no arguments in support of their claim under subsection 2-a, and it is dismissed accordingly.

Alternatively, Plaintiffs ask the Court to construe their existing NYSHRL claim as asserted under subsection 5(a) or for permission to replead the claim. (*Id.*) In essence, Plaintiffs request leave to amend their complaint. Such a request is governed by Rule 15(a)(2) of the Federal Rules of Civil Procedure, which provides that a "court should freely give leave when justice so requires." However, "[l]eave to amend may be denied 'for good reason, including futility.'" *Kim v. Kimm*, 884 F.3d 98, 105 (2d Cir. 2018) (quoting *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 200 (2d Cir. 2007)). "Futility is a determination, as a matter of law, that proposed amendments would fail to cure prior deficiencies or to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure." *Panther Partners Inc. v. Ikanos Commc'ns, Inc.*, 681 F.3d 114, 119 (2d Cir. 2012).

Executive Law § 296 prohibits certain discriminatory practices. Subsection 5(a) provides, among other things, as follows:

12

> It shall be an unlawful discriminatory practice for the owner . . . [of a] housing accommodation . . . [t]o refuse to . . . rent . . . [to] any person or group of persons such a housing accommodation because of the . . . familial status of such person . . . . [or to] discriminate against any person because of . . . familial status in the terms, conditions or privileges of the . . . rental . . . of any such housing accommodation . . . .

N.Y. Exec. Law § 296(5)(a)(1), (2).  The Executive Law defines the term "familial status" as, in relevant part, "any person who is pregnant or has a child or is in the process of securing legal custody of any individual who has not attained the age of eighteen years."  N.Y. Exec. Law § 292(26).

Plaintiffs argue that the Short-Term-Rental Law has "had a discriminatory impact on families with children and women," who comprise "a class of [Plaintiffs'] prospective renters." (Pls.' Opp'n 18–19.)  "[I]t is reasonable to expect that plaintiffs pleading disparate impact claims must include at least one allegation that raises an inference of such disparity—one sufficient to put the defendants on notice regarding the basis for plaintiffs' belief in a disparate effect."  *L.C. v. LeFrak Org., Inc.*, 987 F. Supp. 2d 391, 402 (S.D.N.Y. 2013).  However, Plaintiffs' only factual allegation that even plausibly supports this particular claim is that "[r]enters of Short-Term Rentals are typically families with working parents, or working individuals, whose jobs do not give them the vacation time or income to take vacation [*sic*] for fourteen (14) days or more." (Compl. ¶ 19.)  Although this allegation might raise an inference of disparate impact based on job description or income, it does not indicate that the Law affects prospective renters differently based on whether or not they have children.  Thus, Plaintiffs' proposed amended claim for disparate impact based on the familial status of their prospective renters would fail as a matter of law.  And because the amendment, as proposed, would be futile, Plaintiffs' request is denied.[6]

---

[6] Although Plaintiffs make other allegations regarding discrimination, those allegations regard discrimination based on socioeconomic class, not familial status.  For example, Plaintiffs allege that unidentified "supporters" of the Law

### B.      Constitutional Claims

#### 1.      Equal Protection

"The Fourteenth Amendment's promise that no person shall be denied the equal

protection of the laws must coexist with the practical necessity that most legislation classifies for

one purpose or another, with resulting disadvantage to various groups or persons." *Romer v.*

*Evans*, 517 U.S. 620, 631 (1996).  The Supreme Court has "attempted to reconcile the principle

with the reality by stating that, if a law neither burdens a fundamental right nor targets a suspect

class, [courts] will uphold the legislative classification so long as it bears a rational relation to

some legitimate end." [7]  *Id.*  The Supreme Court has further recognized that "an equal protection

claim can in some circumstances be sustained even if the plaintiff has not alleged class-based

discrimination, but instead claims that she has been irrationally singled out as a so-called 'class

of one.'"  *Engquist v. Oregon Dep't of Agr.*, 553 U.S. 591, 601 (2008) (citing *Vill. of*

*Willowbrook v. Olech*, 528 U.S. 562, 564 (2000)).  "[W]hen it appears that an individual is being

singled out by the government, the specter of arbitrary classification is fairly raised, and the

Equal Protection Clause requires a 'rational basis for the difference in treatment.'"  *Id.* at 602

(quoting *Olech*, 528 U.S. at 564).  In the absence of allegations raising an inference of such

singling out, no equal-protection claim may lie.  *See Ruston v. Town Bd. for Town of*

*Skaneateles*, 610 F.3d 55, 60 (2d Cir. 2010) (affirming dismissal of equal-protection claim in

land-use dispute).

---

intended to restrict the "class and status" of people who were visiting the Town.  (Compl. ¶ 61.)  They further allege
that, contrary to the Town Board's statement of legislative intent, the true intention of the Law was driven by "fear
and anxiety" of having people who could only afford short-term rentals visit the Town.  (*Id.* ¶ 80.)

[7] Equal-protection claims under the New York Constitution are governed by the same standards as analogous federal
claims.  *Pinnacle Nursing Home v. Axelrod*, 928 F.2d 1306, 1317 (2d Cir. 1991) ("[T]he breadth of coverage under
the equal protection clauses of the federal and state constitutions is equal.").

Here, Plaintiffs do not argue that they belong to a protected class but rather that they each comprise a class of one.  (Pls.' Opp'n 8.)  The Second Circuit has described the pleading standard applicable to such a claim:

> Class-of-one plaintiffs must show an extremely high degree of similarity between themselves and the persons to whom they compare themselves.  Accordingly, to succeed on a class-of-one claim, a plaintiff must establish that (i) no rational person could regard the circumstances of the plaintiff to differ from those of a comparator to a degree that would justify the differential treatment on the basis of a legitimate government policy; and (ii) the similarity in circumstances and difference in treatment are sufficient to exclude the possibility that the defendants acted on the basis of a mistake.

*Ruston*, 610 F.3d at 59–60 (internal citation and quotations omitted).  Key to meeting this standard is identifying the existence of comparators who have been treated differently from Plaintiffs.  *See id.* at 60 (affirming dismissal where plaintiffs had cited comparator properties but where such properties were insufficiently similar to plaintiffs' own properties).  They offer none. Absent comparators, Plaintiffs cannot proceed with their class-of-one equal-protection claim.

### 2.     Substantive Due Process

"[T]he Due Process Clause of the Fourteenth Amendment embodies a substantive component that protects against certain government actions regardless of the fairness of the procedures used to implement them."  *Bryant v. N.Y. State Educ. Dep't*, 692 F.3d 202, 217 (2d Cir. 2012) (quoting *Immediato v. Rye Neck Sch. Dist.*, 73 F.3d 454, 460 (2d Cir. 1996) (internal quotation marks omitted)).  The Second Circuit has instructed that, in assessing substantive-due-process challenges against local land-use regulation, "federal courts should not become zoning boards of appeal to review nonconstitutional land-use determinations by the Circuit's many local legislative and administrative agencies."  *Crowley v. Courville*, 76 F.3d 47, 52 (2d Cir. 1996) (quoting *Zahra v. Town of Southold*, 48 F.3d 674, 679–80 (2d Cir. 1995) (internal brackets omitted)).  "Given this concern, a party asserting a deprivation of substantive due process must

15

first establish a valid property interest within the meaning of the Constitution." *Crowley*, 76 F.3d at 52 (citations omitted).  The Second Circuit applies a strict "entitlement test" to determine whether a plaintiff has established a valid property interest sufficient to support a substantive-due-process claim. *DLC Mgmt. Corp. v. Town of Hyde Park*, 163 F.3d 124, 130 (2d Cir. 1998). "[T]he inquiry . . . seeks to determine whether there is a 'legitimate claim of entitlement' to the benefit in question." *Id.* (quoting *Zahra*, 48 F.3d at 680).  "In applying the entitlement test, [a court must] look to 'existing rules or understandings that stem from an independent source such as state law' to determine whether a claimed property right rises to the level of a right entitled to protection under the substantive due process doctrine." *Id*. (quoting *Brady v. Town of Colchester*, 863 F.2d 205, 212 (2d Cir. 1988).

Here, Plaintiffs argue that they have established their "fundamental property right to rent out their homes under New York law."[8]  (Pls.' Opp'n 15.)  In support of this argument, Plaintiffs rely on cases standing for the simple, yet separate, hornbook principle that ownership of real property includes a bundle of rights, one of which is the right to lease.  (*Id*.)  However, "New York zoning law appears to take into account the somewhat intuitive concept that 'a property owner necessarily expects the uses of his property to be restricted, from time to time, by various measures newly enacted by the State in legitimate exercise of its police powers.'" *DLC Mgmt.*, 163 F.3d at 130 (quoting *Lucas v. S.C. Coastal Council*, 505 U.S. 1003, 1027 (1992)). Accordingly, under New York law, a landowner has no vested right to the existing zoning status

---

[8] To the extent Plaintiffs assert substantive-due-process claims for deprivation of their rights to privacy and freedom of association, such claims must be asserted under the Fourth and First Amendments, respectively. *See Terranova v. New York*, 144 F. App'x 143, 147 (2d Cir. 2005) (summary order) (affirming dismissal of substantive-due-process claim on the basis that cause of action was available under Fourth Amendment); *Velez v. Levy*, 401 F.3d 75, 94 (2d Cir. 2005) (affirming dismissal of substantive-due-process claim predicated on alleged violation of the First Amendment).

of her property unless she has made substantial expenditures in reliance on such zoning status.

*Id.*  Although cases applying this standard typically involve requests for residential-construction permits, the Court sees no reason why the same principle should not apply to a broad-based zoning restriction on temporary rentals.  Here, Plaintiffs do not allege that they made any such expenditures.  As Plaintiffs have failed to adequately allege a federally protectable property interest in the unlicensed renting of their homes for periods less than fourteen days, their substantive-due-process claim is dismissed.[9]

>            3.      Right to Privacy

Finally, the parties dispute whether the recordkeeping and search provisions of the Short-Term-Rental Law violate the privacy protections of both the Fourth Amendment and Article I § 12 of the New York constitution.  (Defs.' Mem. 23–24; Pls.' Opp'n. 19–22.)  The relevant portions of the Law provide as follows:

> The owner of a vacation rental shall maintain a copy of the rental agreement on premises, and the rental registry for examination by the Town, if requested. Rental registry records and rental agreements shall be preserved a minimum of three (3) years. . . .
>
> Violation of this Code shall result in fines as set forth below.  The vacation rental license may be suspended or revoked for any violation deemed appropriate by the Town Board, subject to a due process hearing prior to the action.
>
>> a.  For the first violation, a minimum fine of $500, not to exceed $1,500.
>>
>> b.  For the second violation within the next 12 months, a minimum fine of $750, not to exceed $2,500, and/or suspension of the vacation rental license for a period up to six (6) months, and during said time the premises shall not be utilized for a vacation rental.
>>
>> c.  For the third violation within the next 12 months, a minimum fine of $1,000 not to exceed $4,000, and suspension of the vacation rental license

---

[9] Defendants argue that Plaintiffs' substantive-due-process claim must be dismissed because it impermissibly falls "within the ambit" of the Fifth Amendment's Takings Clause.  (Defs.' Mem. 9–10.)  Because Plaintiffs fail to adequately plead this claim, the Court need not decide the issue of whether it should have been asserted under the Takings Clause.

for a period of twelve (12) months, and during said time the premises shall not be utilized for a vacation rental.

d.   The Town Board shall be the body to suspend a vacation rental license pursuant to the section above, and shall offer the permittee a reasonable opportunity to appear and be heard on the suspension prior to imposing the suspension.

(Compl. Ex. A at 4, 5.)

As an initial matter, Defendants state that Plaintiffs do not allege that they "have even been asked to produce [their] rental registr[ies] for examination, that they have been fined or their license[s] ha[ve] been revoked for not producing the registry for inspection." (Defs.' Mem. 23–24.)  Although this appears to suggest a standing challenge, Defendants neither draw a conclusion from these stated facts, nor do they even use the term "standing" anywhere in their Fourth Amendment arguments.  (*See generally id.*; Defs.' Reply 10.)  As Defendants are ably represented by counsel, the Court shall not read into their submissions arguments they do not themselves raise.[10]  Defendants express argument is that "Plaintiffs' facial challenge to [the Law] fails to state a claim for relief because the [Law] does not provide for warrantless searches for the registry [*sic*]" and because the Law provides for a due-process hearing before penalties are imposed for noncompliance.  (Defs.' Mem. 24.)  Defendants are wrong.

The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures" and provides that "no warrants shall issue, but upon probable cause."  U.S. Const. amend. IV.  In *Camara v. Municipal*

---

[10] Perhaps Defendants' omission was intentional, as it is not clear whether they could successfully challenge Plaintiffs' standing on the grounds that Plaintiffs have not been subjected to searches or penalties under the Short-Term-Rental Law.  The Supreme Court has recognized that, "where threatened action by *government* is concerned, [courts] do not require a plaintiff to expose himself to liability before bringing suit to challenge the basis for the threat—for example, the constitutionality of a law threatened to be enforced.  The plaintiff's own action (or inaction) in failing to violate the law eliminates the imminent threat of prosecution, but nonetheless does not eliminate Article III jurisdiction."  *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 128–29 (2007).

*Court of the City and County of San Francisco*, the Supreme Court held that municipal

inspections of private homes must comply with the Fourth Amendment.  387 U.S. 523, 534

(1967).  In *Camara*'s companion case, *See v. Seattle*, the Supreme Court held that the Fourth

Amendment also applies to municipal inspections of commercial premises.  387 U.S. 541, 542

(1967).  In *City of Los Angeles v. Patel*, the Supreme Court clarified the Fourth Amendment

standard that applies to all administrative searches, holding that "absent consent, exigent

circumstances, or the like, in order for an administrative search to be constitutional, the subject

of the search must be afforded an opportunity to obtain precompliance review before a neutral

decisionmaker."  135 S. Ct. 2443, 2452 (2015).  Article I § 12 of the New York constitution is at

least as protective of privacy rights as the Fourth Amendment.  *See People v. Torres*, 543 N.E.2d

61, 63 (N.Y. 1989).

By its plain terms, the Law requires vacation-rental owners to maintain their rental

registries "for examination by the Town, if requested," subject to automatic fines and potential

revocation of their rental licenses for non-compliance.  (Compl. Ex. A at 4.)  As Defendants

note, the Law appropriately provides pre-compliance review before any revocation of a license.

(Defs.' Mem. 24.)  It does not, however, provide similar review before automatic fines are

issued.  To be sure, such civil penalties do not rise to the level of severity that troubled the

Supreme Court in *Camara*, *See*, and *Patel*, where the ordinances at issue imposed criminal

penalties for non-compliance.  *See Patel*, 135 S. Ct. at 2452 ("A hotel owner who refuses to give

an officer access to his or her registry can be arrested on the spot.  The Court has held that

business owners cannot reasonably be put to this kind of choice."); *Camara*, 387 U.S. at 533

("[B]road statutory safeguards are no substitute for individualized review, particularly when

those safeguards may only be invoked at the risk of a criminal penalty."); *See*, 387 U.S. at 542

19

(reversing criminal conviction of defendant for refusing to comply with warrantless

administrative search under city fire code).  Nor does the Law impose the type of sweeping,

automatic, and unlimited reporting requirements—with no pre-compliance review whatsoever—

that another district court recently held would likely violate the Fourth Amendment.  *See Airbnb,*

*Inc. v. City of New York*, No. 18-CV-7712, 2019 WL 91990, at \*16, 20 (S.D.N.Y. Jan. 3, 2019)

("In its sweep, the [o]rdinance dwarfs that of the Los Angeles ordinance at issue in *Patel*.  The

universality of the [o]rdinance's monthly production demand (covering all short-term rentals in

New York City), the sheer volume of guest records implicated, and the [o]rdinance's infinite

time horizon all disfavor the [o]rdinance when evaluated for reasonableness under the Fourth

Amendment.").  Nonetheless, the Law does raise constitutional concerns.

At least two district courts in another circuit have held, on summary judgment, that the

automatic imposition of fines for non-compliance may render an administrative-search regime

unconstitutional.  In one such case, the district court explained, "A process that permits a judicial

challenge only after fines have been incurred puts a property owner to a constitutionally

unacceptable choice of having to either allow the inspection to proceed, or refuse inspection and

hope that a challenge to the scope and conditions of the proposed inspection is later upheld and

all fines are returned or invalidated."  *Garner Properties & Mgmt. v. Charter Twp. of Redford*,

No. 15-CV-14100, 2017 WL 3412080, at \*12 (E.D. Mich. Aug. 8, 2017).  In the other case,

although the ordinance at issue expressly required city officials to obtain a warrant before

entering the property of a non-compliant owner, evidence that the city's policy was to

immediately fine non-compliant owners raised a constitutional question for trial.  *NILI 2011,*

*LLC v. City of Warren*, No. 15-CV-13392, 2017 WL 5467746, at \*9 (E.D. Mich. Nov. 14, 2017).

The district courts' reasoning in these cases echoed the Supreme Court's reasoning in *Patel*:

> Absent an opportunity for precompliance review, the ordinance creates an intolerable risk that searches authorized by it will exceed statutory limits, or be used as a pretext to harass hotel operators and their guests. Even if a hotel has been searched 10 times a day, every day, for three months, without any violation being found, the operator can only refuse to comply with an officer's demand to turn over the registry at his or her own peril.

135 S. Ct. at 2452–53. Here, the Law's automatic fines, though certainly not as severe as the threat of arrest and criminal prosecution, could be used as a pretext for harassment. By failing to provide an opportunity for pre-compliance review before the imposition of fines, the Law may violate the Fourth Amendment. But that is not to say that pre-compliance review alone would make the Law constitutional.

For an administrative-search regime like this one to comply with the Fourth Amendment, the government must also show that "special needs . . . make the warrant and probable-cause requirements impracticable" and that the "primary purpose" of the searches regime is "[d]istinguishable from the general interest in crime control." *Patel*, 135 S. Ct. at 2452 (quoting *Indianapolis v. Edmond*, 531 U.S. 32, 44 (2000) (primary purpose); *Skinner v. Ry. Labor Execs.' Ass'n*, 489 U.S. 602, 619 (1989) (special needs)). Here, based on the complaint alone, the Court cannot make the requisite special-needs or primary-purpose assessments as a matter of law. Nor have Defendants even raised the issues in their briefs. Accordingly, the Court declines to dismiss Plaintiffs' federal and state privacy claims.

## CONCLUSION

For the foregoing reasons, Defendants' Rule 12(b)(1) motion is GRANTED as to Plaintiff Weisenberg, who is dismissed as a party to this action, and DENIED as to Plaintiff Travis-Messer.

Defendants' Rule 12(b)(6) motion is GRANTED with respect to Plaintiffs' claims under the FHA, Town Law § 261, the NYSHRL, the Equal Protection Clauses of the state and federal

21

constitutions, and the Due Process Clause of the federal constitution.  Those claims are dismissed.

The motion is DENIED as to Plaintiffs' claims for violations of their right to privacy under the state and federal constitutions.

SO ORDERED.

Dated: Brooklyn, New York          s/ LDH
       March 27, 2019              LASHANN DEARCY HALL
                                   United States District Judge